# United States Court of Appeals for the Federal Circuit

---

**GLENN DEFENSE MARINE (ASIA), PTE LTD.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**MLS-MULTINATIONAL LOGISTIC SERVICES LTD,**
*Defendant-Appellee.*

---

2012-5125

---

Appeal from the United States Court of Federal Claims in No. 11-CV-718, Judge Marian Blank Horn.

---

Decided: June 25, 2013

---

DAVID S. BLACK, Holland & Knight, LLP, of McLean, Virginia, argued for plaintiff-appellant. With him on the brief was GREGORY R. HALLMARK.

ARLENE PIANKO GRONER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With her on the brief were STUART F. DELERY, Acting Assistant Attorney Gen-

eral, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

SARAH M. GRAVES, Husch Blackwell, LLP, of Washington, DC, argued for defendant-appellee, MLS-Multinational Logistic Services, LTD. With her on the brief were WALTER A.I. WILSON, DANIEL J. DONOHUE and CLAUDE P. GODDARD, JR.

———————

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge WALLACH,*

Dissenting opinion filed by *Circuit Judge* MOORE.

WALLACH, *Circuit Judge.*

Glenn Defense Marine (Asia), PTE Ltd. ("GDMA") appeals from the order of the United States Court of Federal Claims granting the motions of the government and MLS-Multinational Logistic Services Ltd. ("MLS") for judgment on the administrative record. *Glenn Defense Marine (Asia), PTE Ltd. v. United States,* 105 Fed. Cl. 541, 583 (Fed. Cl. 2012).[1] Because GDMA failed to establish that the award of the contract to MLS was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm the Court of Federal Claims.

## BACKGROUND

The United States Navy, Naval Supply Systems Command, Fleet Logistics Center Yokosuka ("Navy") solicited bids on November 3, 2009 for maritime husband-

———————

[1] Citations to the Court of Federal Claims decision are from the redacted version issued for publication July 17, 2012. The opinion was issued under seal on May 25, 2012.

ing support services to Navy ships visiting ports in four regions in the Western Pacific and Indian Ocean for separate negotiated procurements. Offerors were instructed to submit separate proposals for each region in which they sought a contract. The contract for each region would be "Firm-Fixed-Price Indefinite-Delivery, Indefinite-Quantity (IDIQ) type contract," with a twelve-month base period and four one-year options. Solicitation No. N62649-09-R-0041 ("Solicitation"). The Solicitation stated the Navy would award contracts to those proposals that would be "most advantageous to the Government." *Id.* ¶ OP-1.1. The solicitation also stated that, "[t]he following factors, in order of importance, shall be used to evaluate acceptable offers: Technical Approach, Past Performance, and Price. The non-price factors, when combined, are significantly more important than price." *Id.* ¶OP-1.8. The Navy stated it "may accept other than the lowest priced proposal." *Id.* ¶OP-1.5.

Offerors were instructed to submit a Past Performance Matrix, Past Performance Reference Information

Sheets, and other past performance information.[2]  In its Past Performance Matrix an offeror was required to list "all directly related or similar Government or commercial contracts or subcontracts currently being performed, or completed in the past three years which are similar in scope, magnitude[,] and complexity to that which is detailed in this Solicitation." Solicitation ¶ 5.2.  Offerors were also instructed to submit a Past Performance Reference Information Sheet identifying three to five individuals from the contracts listed in the Past Performance Matrix to provide references.  The Technical Evaluation Board and the Past Performance Evaluation Team ("Evaluation Team") evaluated the offers using an adjectival rating accompanied by a narrative to explain the basis for the adjectival rating selected: "Outstanding," "Better," "Satisfactory," "Less than Satisfactory," or

---

[2]     The Solicitation explains:

Past Performance is a measure of the degree to which an offeror satisfied its customers in the past by performing its contractual obligations on relevant directly related contracts and subcontracts (or partnerships or joint ventures) that are similar in scope, magnitude, and complexity to that required by the solicitation (completed within the past 3 years or currently in progress).  There are four areas to be reviewed: Level of Capability, Efficiency, and Effectiveness in Providing Service; Conformance to the Terms and Conditions of the Contract; Level of Reasonableness and Cooperation; and Level of Commitment to Good Customer Service.  Under the Past Performance factor, each of the areas to be reviewed will be given equal consideration.

Solicitation at ¶ OP-18.2.1.

"Neutral." These reports would be provided to the Procuring Contracting Officer/Source Selection Authority who would compare the strengths and weaknesses and make a source selection decision. After all proposals were assigned a set of adjectival ratings, the Navy would engage in negotiations with the offerors. After these negotiations the Navy would determine which proposal provided the best value to the Navy by engaging in a trade-off process. The contract would be awarded to the best value proposal.[3]

---

[3]     48 C.F.R. § 15.101-1 states:

(a) A tradeoff process is appropriate when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror.

(b) When using a tradeoff process, the following apply:

  (1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and

  (2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.

On August 12, 2010, GDMA and MLS submitted their proposals for the Region 1, South Asia, contract. The Evaluation Team received responses to reference questionnaires from four of GDMA's references and from one contracting officer on a relevant contract. Each past performance questionnaire asked the reference to provide an overall rating of GDMA's performance, a rating for various subfactors, and left space for the reference to provide additional comments. The Evaluation Team determined that one of GDMA's reference contracts was highly relevant while the other three were moderately relevant. For the highly relevant contract, reviewers gave overall evaluations of "Better" or "Satisfactory." The Husbanding Branch Chief for the highly relevant contract assessed GDMA's overall performance as "Satisfactory." However, he gave GDMA a "Less than Satisfactory" rating for several subfactors, including ease of communication, timely response to problems and ability to find effective solutions, and performance within negotiated price. J.A. 613. In the narrative comments the Husbanding Branch Chief noted that a number of pre-visit estimates were received late, government specialists routinely needed to request corrections, and email responses were routinely delayed. The review also noted two past performance letters sent to GDMA: one for not providing force protection barriers and the other for failing to provide a proposed pricing plan. A reviewer of one of the moderately relevant contracts indicated an

---

(3) This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406.

overall evaluation of "Outstanding," but noted that GDMA had received a past performance letter about their customer service not being responsive.

In its initial summary report, the Evaluation Team assigned GDMA an overall past performance rating of "Satisfactory." J.A. 536. In its report it cautioned that although the references all gave GDMA overall ratings of "Satisfactory" or better, those rating were not substantiated with narrative comments, which instead provided more support for the "Less than Satisfactory" ratings assigned for several subfactors. The report referenced the negative comments identified in the reviewers' narratives: non-responsiveness by customer service representatives, late or incomplete pre-port visit estimates, a negative past performance letter regarding force protection barriers, failure to provide a pricing plan, delinquent payments, and general non-responsiveness in communications.

On November 4, 2010, the Evaluation Team forwarded its assessments to the primary contracting officer who, that same day, forwarded a draft of the pre-negotiation Business Clearance Memorandum to a member of the Contract Review Board ("Board"). The memorandum assigned GDMA an overall performance rating of "Satisfactory" but also reflected the concerns raised in the past performance questionnaires. *Glenn Defense Marine*, 105 Fed. Cl. at 551. A Board member raised concerns with the primary contracting officer over the "Satisfactory" rating which, in his opinion, "appear[ed] dubious at best." *Id.* (internal quotation marks omitted). After discussing the matter with the Evaluation Team, the primary contracting officer responded that it was a borderline decision. *Id.* The Evaluation Team Chairman indicated to the other reviewers that, in light of the Board member's concern about the "Satisfactory" rating, "[i]t may be easier for us to adjust the ratings downward based on the currently available negative" comments, rather than attempt to substantiate the "Satisfactory" rating. *Id.* (internal quotation marks omitted).

Thereafter two Evaluation Team members submitted revised ratings for GDMA, reporting an overall rating for GDMA's past performance as "Less than Satisfactory." *Id.* at 551–52. Their comments were similar to those in their initial reviews, adding that the information was highly relevant to the region and substantiated by specific and detailed comments, and that the "[l]ack of effective management of subcontractors' performance and controlling contract cost had an overall effect on substandard business practices of which savings to the Government was [sic] not always maximized during port visits." *Id.* at 552 (internal quotation marks omitted).

The Evaluation Team awarded MLS a past performance rating of "Better," with summary notes indicating "[t]he offeror was very cooperative and committed to customer service. This meant that the offeror's past performance record led to a strong expectation of customer satisfaction and successful performance." *Id.* (internal quotation marks omitted). In each element of each area, the Evaluation Team noted that there were no major issues or weaknesses.

After initial evaluations were completed, a Business Clearance Memorandum was drafted and the primary contracting officer sent questions to both GDMA and MLS and asked each to submit a final proposal. The primary contracting officer raised eight past performance issues with GDMA based upon comments in the questionnaires.[4] No past performance questions were asked of MLS. In considering GDMA's responses one reviewer noted that the majority of the corrective actions could not be verified

---

[4] These questions inquired about personnel responsiveness and communication difficulties, significant differences in estimated prices and final invoices, failure to provide purchasing plans, and failure to obtain required compensation for non-priced items.

and the responses did "not fully address the is-sues/deficiencies although some of their responses seem reasonable to resolve them." *Id.* at 553 (internal quotation marks omitted). The primary contracting officer stated that GDMA's "response to the past performance issue about subcontractor management satisfactorily resolved the concerns with that past performance issue. GDM[A]'s response to the other 7 issues did not satisfactorily resolve the past performance concerns raised by the [Evaluation Team]." *Id.* (internal quotation marks omitted).

In the final evaluation both GDMA and MLS achieved a Technical Approach rating of "Better" and a Security Plan rating of "Acceptable." *Id.* GDMA's past perfor-mance rating was "Less than Satisfactory," while MLS's past performance rating was "Better." However, MLS's price was $989,214.00 higher than GDMA's price.

The primary contracting officer noted that GDMA and MLS had relatively equal technical evaluations, but that MLS's past performance rating was higher; thus when combining the non-price factors together, MLS was rated higher than GDMA. Because of the difference in price, a trade-off analysis was required to determine the best value proposal. After performing the trade-off analysis, the primary contracting officer concluded that MLS's proposal was the most advantageous and awarded MLS the contract, Contract No. N62649-11-D-0015, on June 24, 2011.

GDMA filed a protest at the Government Accountabil-ity Office ("GAO") on July 5, 2011. GDMA argued, in part, that the negative comments should not have been weighted as heavily in evaluation of its past performance. The GAO found that "'the Navy reasonably concluded that MLS's past performance offered a clear advantage over the past performance of GDMA, and the Navy reasonably documented its decision to select MLS over GDMA for this reason.'" *Id.* at 556 (quoting *In re Glenn Defense Marine-Asia PTE, Ltd.*, B-402687.6; B-402687.7, 2011 WL 6947628, at *8 (Comp. Gen. Oct. 13, 2011) ("GAO Deci-

sion")).  GAO denied the protest.  GDMA then filed its bid protest with the Court of Federal Claims.  The Court of Federal Claims denied GDMA's motion for judgment on the administrative record and request for injunctive relief and granted the Navy and MLS's motion for judgment on the administrative record.  GDMA timely appealed to this court, which has jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the grant of a motion for judgment upon the administrative record in bid protest actions *de novo*. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004).  In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial. 28 U.S.C. §1491(b)(4) (adopting the standard of 5 U.S.C. § 706); *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  "The court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks and citation omitted).  *De minimis* errors in the procurement process do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996).  The protestor bears the burden of proving that a significant error marred the procurement in question. *Id.*  The protestor's burden is greater in negotiated procurement, as here, than in other

types of bid protests because "'the contracting officer is entrusted with a relatively high degree of discretion.'" *Galen*, 369 F.3d at 1330 (quoting *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980)). "[T]he greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Burroughs*, 617 F.2d at 597. Moreover, this court accords contracting officers an even greater degree of discretion when the award is determined based on the best value to the agency. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). Ultimately, to prevail in a bid protest, the protestor must show prejudicial error. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

GDMA argues that the Navy's best value determination and award of the Region 1 contract to MLS was arbitrary and capricious due to its reliance upon the Evaluation Team's flawed evaluation of GDMA and MLS. GDMA asserts that the Navy's rating of GDMA's past performance as "Less than Satisfactory" and its rating of MLS's past performance as "Better" both lacked rational bases and were inconsistent with the record evidence. In addition, GDMA asserts that the Court of Federal Claims misapplied the standard for determining prejudice. We address each argument in turn.

I.   The Navy's Best Value Determination Was Not Arbitrary And Capricious

"Procurement officials have substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss*, 77 F.3d at 449. In this case, the Navy's best value decision is supported by the record and well within the substantial discretion of the contracting officials. After considering all of the offerors' proposals, references, and corrective actions, the Navy reasonably determined that an award to MLS would provide the best value. In particular, the Navy reasonably compared the negative comments in GDMA's relevant references and GDMA's inadequate corrective action to

the reviews of MLS, which contained no negative feed-back. The contracting officer determined that although there was a price difference between GDMA's final proposal and MLS's final proposal, MLS had superior past performance and would ultimately provide the best value to the Navy. This was consistent with the Solicitation, which expressly stated that non-price factors were significantly more important than price. Even considering price, the contracting officer reasonably found the real cost to the Navy might actually be higher if the award went to GDMA because of increased administration costs resulting from GDMA's documented non-responsiveness in communications, late estimates, etc.[5] Based on the record and recognizing the broad discretion courts afford agencies in the negotiated procurement process, the Navy's best value determination was not arbitrary, capricious, or in violation of law.

---

[5] GDMA contends that the trade-off analysis does not explain why an award to GDMA over MLS would require enhanced contract oversight and management. However, the primary contracting officer explained that the increased costs may be necessary to mitigate risks expected based upon GDMA's past performance. Due to GDMA's documented lack of responsiveness, the primary contracting officer deduced that a contract with GDMA would require additional contract administration costs from a recurring need for contracting officials to follow-up with GDMA on material issues such as late pre-port cost estimates, lack of response to correspondence, and pricing issues. The primary contracting officer based his projection of future increased contract administration costs on the follow-up needed with GDMA in the past. The primary contracting officer adequately explained the factors considered.

## II. GDMA's Past Performance Evaluation Did Not Lack Rational Basis

GDMA argues that the Navy's past performance rating of "Less than Satisfactory" is inconsistent with the record evidence because the references upon which the Evaluation Team relied all rated GDMA's overall performance as "Satisfactory" or better. However, GDMA cites no reason why the Navy should have only considered the overall ratings and disregarded the subfactor ratings and narrative comments. The Navy's decision was rationally based on its evaluation of all of the evidence before it. Even though each reference rated GDMA's performance as "Satisfactory" or "Better" overall, the narrative comments detracted from those ratings. The Navy reasonably considered the entire record, including several "Less than Satisfactory" subfactor ratings and negative comments from the narrative portion of the questionnaires.[6] The

---

[6] The dissent cites to the overall and subfactor ratings as if these adjectival ratings can be added up and "averaged out" to score the contractor. Dissent Op. 3-4. However, these reports are not subject to a mathematical calculation. The Evaluation Team considered the adjectival ratings in light of the accompanying narrative comments, which was within their discretion. *E.W. Bliss*, 77 F.3d at 449 (discussing the substantial discretion with which procurement officials are entrusted to find the best value for the government). Moreover, notwithstanding the single positive comment the dissent cites, Dissent Op. at 3–4, the reviewer also noted that GDMA's "prices for the non-contract are rather high and attempt to negotiate the cost seem pointless." J.A. 611. Additionally, she commented that there were "[n]o major issues under the purview of this contract except the DAO Representative in India complained about their services during the USS Shiloh and USS Lassen visit to GOA in Apr 10. He complained about GDMA's inability to provide pier side force protection services utilizing containers. The pier area

evaluation Team's report stated that "[o]verall, [GDMA] was less than fully cooperative and did not demonstrate a commitment to service." *Glenn Defense Marine*, 105 Fed. Cl. at 554 (internal quotation marks omitted). The primary contracting officer observed that the majority of GDMA's re-visit estimates for port visits were received late and repeatedly required corrections. He also indicated that GDMA had failed to provide force protection barriers as specified by the ships in their order. In another instance, GDMA failed to provide a pricing plan, which was necessary to insure that non-priced items were fairly and reasonably priced. Finally, the primary contracting officer noted routine delays in GDMA's responses to questions, which "exacerbate[d] the short lead time for arranging port visit services." *Id.* at 566 (internal quota-

was not cordoned off appropriately." *Id.* At any rate, our role is not to search for statements that could support a reversal, but rather, to determine whether there was a rational basis for the Navy's decision.

tion marks omitted).[7] The Evaluation Team's final Summary Report for GDMA indicated:

---

[7]    The primary contracting officer's notes stated:

1-6 of 9 pre-visit estimates for port visits covered by this contract from 27 OCT 09–present were received late. In addition, the contract specialists at FISC Det. Singapore routinely have to request corrections to the PCEs received for port visits (e.g. not all items requested in the LOGREQ [logistical requirements] are included in the PCE [pre-visit cost estimates]).

2-A negative past performance letter regarding the USS LASSEN and USS Shiloh port visits to Goa, India was sent to GDMA on 6 July 10. GDMA did not provide force protection barriers as specified by the ships in their ordering LOGREQs. A complaint from State Department personnel in Goa led to the issuance of this past performance letter.

3-A negative past performance letter regarding performance under this contract was sent to GDMA on 14 JUN 10. GDMA has not provided a proposed pricing plan for insuring that non-priced items are offered at fair and reasonable prices. This pricing plan is a deliverable specified under this contract. Fair and reasonable pricing for non-priced items is an unresolved issue under this contract. The FISC Det. Singapore office has yet to receive competitive price quotations for any non-priced services provided under this contract.

> For Region 1, [GDMA's] past performance on pre-
> viously awarded relevant contracts did not meet
> some significant requirements. Although the offe-
> ror was generally responsive to changes in re-
> quirements, provided timely services and had
> reasonably good control over managing subcon-
> tractors, there were several noted deficiencies in
> its performance when it came to the reliability
> and consistency of its customer service practices,
> transparency in pricing and ease of communica-
> tions.

*Id.* at 554.

Moreover, the Navy's rating was not premised on these references alone. Before the Navy's final rating, the Navy gave GDMA an opportunity to respond to specific concerns. GDMA acknowledged those issues and explained it had taken or was in the process of taking corrective action. The Navy conducted a follow-up review and found that these corrective actions had not adequately addressed its concerns. In considering GDMA's corrective action in response to the negative reviews, the reviewer found GDMA's corrective action "lacked sufficient details for the [Evaluation Team] to determine the offeror's effectiveness in addressing the deficiencies." *Id.* In sum, GDMA's past performance record led the Evaluation Team "'to expect marginal customer satisfaction and less than fully successful performance.'" *Id.* (quoting the Evaluation Team's Summary Report).

---

4-Email responses from GDMA representatives to questions from the FISC Det. Singapore contract specialists are routinely delayed. The delayed responses exacerbate the short lead time for arranging port visit services.

*Glenn Defense Marine*, 105 Fed. Cl. at 566.

Based upon the broad discretion courts afford agencies in the procurement process and based upon the ratings and comments in the past performance questionnaires, the analysis and review performed by the Evaluation Team and the contracting officer, as well as the discussions between GDMA and the Navy, this court cannot conclude that the overall past performance rating of "Less than Satisfactory" lacked rational basis. The Navy established a rational basis for its decision, explaining that a higher rating was not substantiated by the comments, and the agency's reasonable interpretation of the facts is entitled to considerable deference.

### III. MLS's Past Performance Evaluation Did Not Lack Rational Basis

GDMA asserts that the Navy's rating of MLS's past performance as "Better" was arbitrary and capricious on the grounds that the "underlying finding" that the contracts of MLS's subcontractors were highly relevant lacks a rational basis. GDMA asserts that the Evaluation Team could not provide a rational basis for finding the contracts performed by MLS's subcontractors were of similar scope, magnitude, and complexity to that in the Solicitation because the record is incomplete.

The Solicitation stated that "[p]ast [p]erformance is a measure of the degree to which an offeror satisfied its customers in the past by performing its contractual obligations on relevant directly related contracts and subcontracts . . . that are similar in scope, magnitude, and complexity to that required by the solicitation. . . ." Solicitation ¶ OP-1.8.2.1. It also stated that "[i]n the case of an offeror whose past performance is somehow not similar in scope, complexity, or magnitude, or otherwise lacks relevance to some degree then the Government will take this into consideration and evaluate accordingly . . .." *Id.* ¶ OP-1.8.2.4.

MLS's subcontracts involved husbanding services at many of the same ports covered by the Solicitation, for a

variety of vessels of various sizes that "'spend the majority of their useful life traveling from port to port,'" similar to the services required by this Solicitation. *Glenn Defense Marine*, 105 Fed. Cl. at 575 (quoting GAO Decision at *8). The Navy's determination of relevance is owed deference as it is among "the minutiae of the procurement process," which this court "will not second guess." *E.W. Bliss*, 77 F.3d at 449 (finding matters such "as technical ratings and the timing of various steps in the procurement" to involve discretionary determinations); *see also Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 718 (2010) ("Thus, when evaluating an offeror's past performance, the [Source Selection Authority] may give unequal weight, or no weight at all, to different contracts when the [Source Selection Authority] views one as more relevant than another.") (internal quotation marks and citations omitted); *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 539 (2010) ("At the outset, it is important to note that what does or does not constitute 'relevant' past performance falls within the [Source Selection Authority's] considered discretion.").

Additionally, the Court of Federal Claims noted that there is no evidence that MLS's past performance would have been evaluated any lower than "Better" if the subcontractors' references were given less weight. The Evaluation Team's summary report indicated that:

> The offeror was very responsive to customer service issues, provided timely services, flexible when responding to changes in requirements, maintained control over managing subcontractors, was transparent in its pricing processes and was effective in communications. Overall, the offeror was very cooperative and demonstrated a commitment to customer service. There were no substantiated problems or issues documented in this past performance assessment. Therefore, based upon the offeror's past performance record, it leads the

[Evaluation Team] to expect a strong customer satisfaction and fully successful performance.

*Glenn Defense Marine*, 105 Fed. Cl. at 555 (quoting the Evaluation Team's Summary Report).[8]  Accordingly, the Court of Federal Claims' determination did not lack rational basis.

IV. GDMA Did Not Allege Prejudicial Error

If GDMA had prevailed in showing error in the award to MLS, it would also bear the burden of showing that error was prejudicial.  As discussed above, the Navy's past performance evaluations were rationally based.  Moreo-

---

[8]   GDMA also argues that the Court of Federal Claims improperly relied on the Navy's submissions to GAO, which it argues are *post hoc* rationalizations, to support its decision.  The Navy's submissions to the GAO were those required by 31 U.S.C. § 3553(b)(2), and included an articulation of the agency's reasoning in response to the protest.  All of the materials submitted to the GAO are part of the administrative record before the Court of Federal Claims. 31 U.S.C. § 3556.  In a case involving a post-award conflict of interest investigation and analysis, this court noted that courts "reviewing bid protests routinely consider . . . evidence developed in response to a bid protest." *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1386 (Fed. Cir. 2011). The Court of Federal Claims cited these submissions to support its finding that the subcontractors' references were highly relevant because they required services that were "similar in scope, magnitude, and complexity." *Glenn Defense Marine*, 105 Fed. Cl. at 573–74 (internal quotation marks omitted).  Even if the submissions were not appropriately considered, based upon the high ratings on all of the references and only positive comments, the Navy's rating of MLS's past performance does not lack a rational basis.

ver, the Court of Federal Claims was correct in finding that GDMA was not prejudiced by receiving a "Less than Satisfactory" rating, as opposed to a "Satisfactory" rating.

To prevail in a bid protest case, the protestor must show that it was prejudiced by the government's actions. *Bannum*, 404 F.3d at 1351. To establish prejudice, GDMA must show that there was a substantial chance it would have received the contract award but for the Navy's allegedly erroneous past performance rating. *See id.* at 1358; *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996). Unlike other issues in this case, prejudice is a question of fact that this court reviews for clear error. *Bannum*, 404 F.3d at 1353–54.

The Court of Federal Claims found that even if GDMA should have gotten a "Satisfactory" rating instead of "Less than Satisfactory" for past performance "it is not at all clear a trade-off analysis would have resulted in [GDMA] receiving the contract award." *Glenn Defense Marine*, 105 Fed. Cl. at 572. The court explained: "Even with a Satisfactory rating for past performance, [GDMA] still would have had an inferior past performance rating as compared to MLS, and still would have had negative past performance comments in the record, which [GDMA] did not challenge." *Id.* at 571. GDMA does not provide anything but conjecture that even with a "Satisfactory" rating it would have had a substantial chance of prevail-

ing in the bid.[9]  The Court of Federal Claims did not clearly err in finding GDMA had not shown prejudice from being rated "Less than Satisfactory" rather than "Satisfactory."

CONCLUSION

Accordingly, the Court of Federal Claims' decision is affirmed.

**AFFIRMED**

---

[9]     GDMA asserts that the court erred in "[r]equiring GDMA to establish that it is 'clear' that a trade-off analysis would have resulted in GDMA receiving [an] award." Appellant's Br. at 64. Contrary to GMDA's argument, the Court of Federal Claims did not require it to show it would 'clearly' have received the contract award but for the alleged error.  Rather, the Court of Federal Claims stated that "it is not at all clear" that GDMA would have received the contract award but for the past performance rating.  It thoroughly recited the "substantial chance" standard in its standard of review section, *see Glenn Defense Marine*, 105 Fed. Cl. at 558-59, and applied that standard in its analysis of the facts.

# United States Court of Appeals
# for the Federal Circuit

---

**GLENN DEFENSE MARINE (ASIA), PTE LTD.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**MLS-MULTINATIONAL LOGISTIC SERVICES LTD,**
*Defendant-Appellee.*

---

2012-5125

---

Appeal from the United States Court of Federal Claims in No. 11-CV-718, Judge Marian Blank Horn.

---

MOORE, *Circuit Judge*, dissenting.

The majority in this case affirms the decision by the Court of Federal Claims granting judgment on the administrative record in favor of the government. I dissent because the court erred by concluding that the U.S. Navy had a rational basis for finding that Glenn Defense Marine (Asia), PTE Ltd. (GDMA) deserved an overall rating of "Less than Satisfactory" for its past performance. That rating lacks a rational basis, both legally and mathematically. All of GDMA's references rated its past performance as "Outstanding," "Better," or "Satisfactory."

As part of the U.S. Navy's process of awarding a contract for maritime husbanding services in the South Asia region, a Past Performance Evaluation Team (PPET) evaluated the offerors' past performance. The PPET was instructed to use adjectival ratings: "Outstanding," "Better," "Satisfactory," "Less than Satisfactory," or "Neutral."

Four of GDMA's references provided feedback regarding its past performance. The PPET determined that one of the prior contracts, the South Asia contract, was highly relevant to the contract at issue while the other three were moderately relevant. Of the moderately relevant contracts, two reviewers rated GDMA as "Outstanding" while the third gave it a rating of "Better." The reviewer for the highly relevant contract rated GDMA as "Better." The PPET received a second questionnaire regarding the South Asia contract from the contracting officer, who rated GDMA as "Satisfactory." The chart below summarizes the references' overall ratings of GDMA's past performance.

| Reference | Overall Rating |
| --- | --- |
| South Asia Contract<br>First Reference<br>Second Reference | Better<br>Satisfactory |
| Thailand Contract | Better |
| Singapore Contract | Outstanding |
| BIMET Contract | Outstanding |

Despite these high past performance ratings, the PPET gave GDMA an overall past performance rating of "Satisfactory." This seems inconsistent with the ratings themselves. Even more perplexingly, based on no new or

additional information, the PPET later revised GDMA's past performance rating downward to "Less than Satisfactory." The purported basis for such a low rating was negative comments that some of GDMA's references included in the past performance questionnaires they submitted. GDMA's references, however, did not themselves believe that their own negative comments warranted such a low rating. And GDMA's references were uniquely positioned to consider the appropriate impact to give their own negative comments on GDMA's overall rating, given their interaction with GDMA over the course of the contracts at issue. The PPET group, which decided to give GDMA a less than satisfactory rating, based their decision exclusively on these references; they had no additional or independent information which would warrant lowering the ratings. GDMA received two "Outstanding," two "Better," and one "Satisfactory" rating. In what universe do these ratings average out to an overall rating of "Less than Satisfactory"? The Navy lacked a rational basis for giving GDMA a lower rating than any of the company's references and for weighing the negative comments on the questionnaires far more heavily than the references themselves did.

It is important to understand that each of these reviews had an overall past performance rating, nine subcategory ratings, and a section for comments. It is true that one of the two reviewers for the South Asia contract listed a number of problems that he encountered with GDMA in the performance of the contract. Even this reviewer, who rated GDMA "Satisfactory" overall, gave GDMA one "Better," four "Satisfactory," and four "Less than Satisfactory" subcategory ratings. And the primary reviewer for the South Asia contract, who gave GDMA a "Better" overall rating for the same contract, gave GDMA four "Outstanding," four "Better," and one "Satisfactory" rating for the same nine subcategory rating criteria. This reviewer noted in her comments some of the same problems, but also included positive comments such as, "[t]hey are very professional and their staff are very knowledgea-

ble and experience[d]." She further explained that, "[t]he ports in South Asia ha[ve] limited infrastructure and GDMA has the ability to support a carrier visit to Chennai with limited services available." In the other three contracts, there were a total of twelve "Outstanding," six "Better," and one "Satisfactory" subcategory rating. In light of this record, PPET did not have a rational basis for rating GDMA "Less than Satisfactory" overall for past performance.

PPET did its own cumulative version of the nine subcategory rating criteria, and its conclusions regarding the subcategories seem just as divorced from the underlying data as the overall ratings. For example, the PPET gave GDMA an overall rating of "Satisfactory" for the subfactor "Reliability and consistency of the company's key personnel." The individual ratings for this subfactor, however, were three "Outstanding" ratings, one "Better," and one "Satisfactory." Similarly, for the subfactor of "Timeliness in providing goods and/or services in accordance with the contract schedule," the PPET rated GDMA as "Satisfactory" even though GDMA's references gave it three "Outstanding" ratings, one "Better," and one "Satisfactory."

GDMA's past performance was not flawless, as the ratings clearly reflect. Certainly this record would have supported a past performance rating of "Better" or maybe even "Satisfactory," but there is no rational basis for PPET's decision to rate GDMA "Less than Satisfactory."

GDMA was one of only two bidders in the competitive range, and its price was roughly 64% lower than the other bidder. GDMA was rated equal to the other bidder on every factor except past performance, where the other bidder received a rating of "Better." Based on GDMA's lower price and equivalency in other areas, I believe that it would have had a substantial chance to receive the contract but for the Navy's errors regarding past performance. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Therefore, I dissent.