NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**AMERICAN RELOCATION CONNECTIONS, L.L.C.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

———————————

2019-1245

———————————

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00963-MBH, Senior Judge Marian Blank Horn.

———————————

Decided: October 11, 2019

———————————

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for plaintiff-appellant.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

———————————

Before REYNA, CHEN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

This case involves a pre-award bid protest to a solicitation issued by Customs and Border Protection for the procurement of employee relocation services. American Relocation Connections, L.L.C. appeals a decision of the Court of Federal Claims granting judgment on the administrative record in favor of the government and dismissing ARC's bid protest. *See Am. Relocation Connections, L.L.C. v. United States*, 139 Fed. Cl. 747 (Oct. 22, 2018). ARC claims that CBP violated Small Business Administration regulations by failing to consult with the SBA during its market research for the solicitation. Because ARC cannot show that it was prejudiced by CBP's failure to consult with the SBA, we affirm.

I

A.

Section 1331 of the Small Business Jobs Act of 2010 directs the SBA to "establish guidance under which Federal agencies may, at their discretion . . . set aside orders placed against multiple award contracts for small business concerns . . . ." Pub. L. 111–240, 124 Stat. 2504. Following that directive, the SBA promulgated 13 C.F.R. § 125.2(c)(2), which requires an issuing agency to "conduct market research to determine the type and extent of foreseeable small business participation in the acquisition." During its market research, the agency "must consult with the applicable [Procurement Center Representative] (or if a PCR is not assigned to the procuring activity, the SBA Office of Government Contracting Area Office serving the area in which the buying activity is located) and the activity's Small Business Specialist." *Id.*

ARC is a nationally recognized small business that provides employee relocation and related services. In 2014, CBP awarded ARC a contract to provide the agency with

employee relocation services. The 2014 contract was set aside for small businesses under NAICS code[1] 484210. CBP extended ARC's performance under the 2014 Contract through July 2018. The 2014 Contract requested services listed under the General Services Administration Federal Supply Schedule (FSS)[2] 48 for Special Item Numbers (SINs)[3] 653-1, 653-4, 653-5, and 653-7.

In 2017, CBP chose to re-compete its employee relocation services contract. In August 2017, CBP issued Request for Quotations No. HSBP1017Q0046 (2017 RFQ), which requested services under FSS 48 for SINs 653-1, -4, -5, and -7. The 2017 RFQ stated that the underlying procurement was set aside for small businesses. CBP

---

[1] The North American Industry Classification System (NAICS) is the standard used by the Federal Government to classify businesses. The Small Business Administration develops size standards for each NAICS category and uses those standards to determine which businesses qualify as small businesses. *See* 13 C.F.R. § 121.101; *see also id*. § 121.201.

[2] The Federal Supply Schedule, also known as the GSA Schedules program or the Multiple Award Schedule Program "provides Federal agencies . . . with a simplified process for obtaining commercial supplies and services at prices associated with volume buying." FAR 8.402(a). "A GSA Schedule is a list of product and service items and of indefinite-delivery indefinite-quantity contracts for a particular class of products or services against which agencies may issue task and delivery orders." John Cibinic, Jr. et al., *Formation of Government Contracts* 1144 (4th ed. 2011).

[3] Special Item Numbers represent "a group of generically similar (but not identical) supplies or services that are intended to serve the same general purpose or function." FAR § 8.401.

cancelled the 2017 RFQ, however, because the solicitation referred to an outdated version of the Statement of Work for SIN 653-7, which did not require the contractor to use GSA's Centralized Housing Goods Traffic Management Program for household goods moving services.

After cancelling the 2017 RFQ, CBP continued its market research in coordination with a GSA contracting officer to determine whether the solicitation should be set aside for small businesses. In December 2017, CBP determined that based on the estimated value of work under the new solicitation, the appropriate NAICS code was 531210. *See* 13 C.F.R. § 121.402(c)(2)(i) ("When placing an order under a Multiple Award Contract with multiple NAICS codes, the contracting officer must assign the NAICS code and corresponding size standard that best describes the principle purpose of each order."). CBP's market research showed that only one certified small business was available to compete under that NAICS code.[4] Because not enough certified small businesses met the competition threshold under the chosen NAICS code, CBP issued Request for Quotations No. 70B05C18Q00000021 (2018 RFQ) on January 19, 2018 as unrestricted to Schedule 48 contract holders, including ARC. When originally released, the 2018 RFQ did not state CBP's chosen NAICS code.

Upon learning that the 2018 RFQ was not set aside for small businesses, ARC contacted the Department of Homeland Security Office of Small & Disadvantaged Business Utilization to inquire why the solicitation had not been set aside. Anthony Bell, a DHS Small Business Advisor, then

---

[4]      Although the System for Award Management database listed two businesses as certified small businesses under NAICS 531210—Sibcy Cline Relocation Services and Choice Relocation Management—the GSA contracting officer notified CBP that Sibcy Cline would not renew its option and would expire in March 2018.

contacted CBP, asking why the agency had decided not to set aside the 2018 RFQ as it had done with the 2014 Contract.

On February 5, 2018, CBP issued Amendment 1 to the 2018 RFQ, which clarified that the applicable NAICS code for the solicitation was 531210. The next day, CBP emailed Mr. Bell, explaining that the 2018 RFQ was being issued under NAICS code 531210 and noting that the System for Award Management database designated ARC as a large business under that NAICS code.[5] CBP further explained that "even [if] ARC were to be a small business for the sake of argument under NAICS 531210, there won't be enough small business[] vendors to meet the competition threshold." J.A. 92. The certificates of the two other certified businesses under that code, Sibcy Cline and Choice Relocation, were both expiring at the end of the quarter. Mr. Bell responded that "I have no objections to this requirement going unrestricted." J.A. 22.

On February 7, 2018, a CBP contracting officer completed a Small Business Review Form for the 2018 RFQ. That form clarified that CBP had chosen NAICS code 531210 for the solicitation and that "there was not a reasonable expectation that CBP would receive two to three small business proposals needed for maximum competition." J.A. 260. Over the following week, a DHS Small Business Specialist and an SBA Procurement Center Representative concurred with CBP's decision to issue the 2018 RFQ unrestricted.

---

[5]     When CBP issued the 2018 RFQ, the System for Award Management database did not list ARC as a certified small business under NAICS code 531210 due to an "administrative error." J.A. 23. ARC has since updated its certifications to reflect that it is certified as a small business under that NAICS code in the database.

B.

On February 12, 2018, ARC filed a protest to the 2018 RFQ with the Government Accountability Office. The GAO dismissed ARC's protest, finding that the decision to set aside orders against the FSS, such as the 2018 RFQ, is within the agency's discretion, so "ARC's argument fails to state adequate legal grounds of protest." J.A. 269. ARC then filed a pre-award bid protest with the Court of Federal Claims. ARC argued that CBP erroneously failed to set aside the 2018 RFQ for small businesses and claimed that CBP failed to consult with the SBA during its market research under 13 C.F.R. § 125.2(c)(2).

The parties filed cross motions for judgment on the administrative record, and the Court of Federal Claims granted judgment in favor of the government, dismissing ARC's protest and denying its request for a preliminary and permanent injunction. The court held that § 125.2(c)(2) does not apply to orders placed against multiple award contracts, such as the FSS. Thus, CBP did not need to consult with the SBA while conducting its market research for the 2018 RFQ. The court also held that ARC failed to show that it was prejudiced by CBP's failure to consult with the SBA during its market research. The court found that "regardless of whether CBP consulted with the SBA or a Small Business Specialist during the market research phase, there appears to have been only one certified small business under NAICS Code 531210 at the time the 2018 RFQ was issued, and consequently, there would not have been an expectation of receiving at least three offers from small businesses." J.A. 63. The court noted that ARC had waived any challenge to CBP's choice of NAICS code 531210 by failing to appeal that decision to the SBA's Office of Hearings and Appeals within 10 days of the issuance of the solicitation under 13 C.F.R. § 121.1103(b)(1). It also noted that the SBA reviewed CBP's rationale after the 2018 RFQ issued, and it

concurred with CBP's decision to issue the solicitation unrestricted.

ARC now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

The principle dispute between the parties is whether the requirements of 13 C.F.R. § 125.2(c)(2) apply when a federal agency issues an order against a multiple award contract, such as the FSS. We need not reach that issue, however, because we agree with the trial court's finding that ARC cannot show that it was prejudiced by CBP's failure to consult with the SBA during its market research.

We review a grant of judgment on the administrative record by the Court of Federal Claims in a bid protest de novo. *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). "In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Id.*; *see also* 28 U.S.C. § 1491(b)(4) (adopting the standard in 5 U.S.C. § 706). "To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process." *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999); *see also* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."). Prejudice is a question of fact, and we review the findings of the Court of Federal Claims thereon for clear error. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

A.

First, we address ARC's claim that it need only establish standing to protest the 2018 RFQ to show that CBP's failure to consult with the SBA was prejudicial error on the merits. We disagree. Whether a party has alleged an injury-in-fact (or prejudice) to establish Article III standing is distinct from whether that party can prove prejudicial error on the merits. *See, e.g., Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) ("The 'legal interest' test goes to the merits. The question of standing is different."); *see also* 2 Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise* 1701 (6th ed. 2019) ("The Court [in *Data Processing*] specifically rejected the 'legal interest' or 'legal right' approach as going to the merits of the controversy, rather than bearing on the issue of standing."); *c.f. Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

To establish standing in a bid protest case, the protestor must show that it is an "interested party" under 28 U.S.C. § 1491(b)(1), "which . . . imposes more stringent standing requirements than Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Under § 1491(b)(1), a party must show that it "(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). In a post-award bid protest, the prospective bidder "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). In a pre-award bid protest, however, a prospective bidder need only allege a

"non-trivial competitive injury which can be addressed by judicial relief." *Weeks*, 575 F.3d at 1363.

ARC contends that it has suffered "a non-trivial competitive injury" and thus has standing to challenge the 2018 RFQ. The government does not contest that ARC has standing. Oral Arg. at 25:56–26:02, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1245.mp3. Instead, the government claims that ARC cannot prove that it was prejudiced by CBP's failure to consult with the SBA, which the government argues goes to the merits of ARC's protest. The government's position tracks the trial court's decision, which did not address standing, but rather found that ARC was not prejudiced after reaching the merits of its claims.

We agree with ARC that it has standing to bring its protest here, but we do not agree that this necessarily means ARC has shown that CBP's failure to consult with the SBA was prejudicial error on the merits. Standing is a threshold jurisdictional inquiry to determine "whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen*, 392 U.S. 83, 101 (1968). For standing, we presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by the procuring agency's actions. *See Info. Tech.*, 316 F.3d at 1319 (finding that protestor had standing "because it had greater than an insubstantial chance of securing the contract *if successful* on the merits of the bid protest" (emphasis added)). But once we find that a party has standing, we must turn to the merits of the party's claim and determine whether it can prove it was prejudiced based on the record evidence. *See Bannum, Inc.*, 404 F.3d at 1357–58

(finding no prejudice because "Bannum's argument rests on mere numerical possibility, not evidence").[6]

We acknowledge that many of our bid protest cases discuss the requirement to show prejudice in the context of standing. *See, e.g., Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) ("To some extent, the Court of Federal Claims appears to have treated the question of whether Myers was prejudiced by the GSA as different from the question of whether Myers has standing. In fact, prejudice (or injury) is a necessary element of standing."); *see also Info. Tech.*, 316 F.3d at 1319 ("[T]he question of prejudice goes directly to the question of standing[;] the prejudice issue must be reached before addressing the merits."); *Weeks Marine Inc.*, 575 F.3d at 1361 ("Article III considerations require a party . . . to make a showing of *some* prejudice."). But we do not read those cases as holding that satisfying § 1491(b)(1)'s standing requirements necessarily establishes that any procedural error committed by the procuring agency was prejudicial error on the merits.

In *Information Technology*, the protestor Info. Tech. argued that an agency's award of a contract should have been set aside and that the agency failed to conduct "discussions" that would have allowed Info. Tech. to cure deficiencies in its bid. 316 F.3d at 1319. We held that Info. Tech. had standing because "[t]here is no question . . . that [Info. Tech.] was a qualified bidder and that its proposal would

---

[6]   We recognize that there may be cases in which the claim of prejudice "is so specious or patently implausible that a threshold standing objection might be appropriate." *Save Our Heritage, Inc. v. F.A.A.*, 269 F.3d 49, 56 (1st Cir. 2001). But we agree with our Sister Circuit that "beyond that, . . . the likelihood and extent of impact are properly addressed in connection with the merits and issues of harmless error." *Id.*

have been improved and its chances of securing the contract increased if the problem with its cost estimate had been cured." *Id.* Thus, Info. Tech. successfully alleged an injury (or prejudice) for standing purposes because if it succeeded on the merits and the agency re-bid the contract, it would have a "greater than an insubstantial chance of securing the contract." *Id.* In *Weeks Marine*, Weeks brought a pre-award bid protest challenging a solicitation that used negotiated indefinite quantity multiple-award task order contracts instead of the agency's previous sealed competitive bidding procedures. *Weeks Marine, Inc.*, 575 F.3d at 1354–55. Under the negotiated indefinite quantity process, the agency "could deny Weeks all task orders . . . without any explanation or discussions, or any ability for Weeks to seek bid protest review." *Id.* at 1362. We held that Weeks had standing because "the solicitation prevent[ed] Weeks from competing for . . . task order awards over the next five years through sealed bidding," causing Weeks to suffer a non-trivial competitive injury. *Id.* And in *Myers*, we held that Myers lacked standing because it presented no evidence that it would have been a qualified bidder if the government re-bid a contract as a competitive, rather than sole-source procurement. *Myers*, 275 F.3d at 1370–71. Because Myers would not be in a better position to secure the contract even if it succeeded on the merits, it could not show that the agency's actions caused it to suffer a concrete injury.

Here, ARC claims that SBA regulations required CBP to consult with the SBA during market research for the 2018 RFQ. ARC also alleges that if that consultation had occurred, CBP would have likely issued the 2018 RFQ as a set-aside for small businesses. If ARC were to succeed on the merits of its claim, and if CBP re-issued the 2018 RFQ as a small business set-aside, ARC would be in a better competitive position to secure the contract. Unlike *Myers*, where the protestor would not have been a qualified bidder even if the solicitation was re-issued, ARC would

indisputably qualify to compete as a small business if the 2018 RFQ is set aside.  Therefore, we agree with ARC that having to compete for the 2018 RFQ on an unrestricted basis is a "non-trivial competitive injury" capable of being redressed by this court, and we find that ARC has standing to bring its pre-award protest.  *See Weeks Marine, Inc.*, 575 F.3d at 1362.

B.

We now turn to the issue of whether ARC can show that CBP's failure to consult with the SBA was prejudicial error.[7]  Given the administrative record, we agree with the Court of Federal Claims that ARC cannot show that CBP might have issued the 2018 RFQ as a set-aside for small businesses even if it had consulted with the SBA.

We review bid protest cases according to the standards in 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).  Section 706 instructs courts that "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  That rule calls on courts to apply the "same kind of 'harmless-error' rule that courts ordinarily apply in civil cases."  *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (discussing identical language in 38 U.S.C. § 7261(b)(2) and noting that "Congress intended [that statute] . . . to 'incorporate a reference' to the APA's approach").  Similarly, the federal harmless error statute instructs courts to disregard "errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111.  "The correction of an error must yield a different result in order for that error to have been harmful and thus prejudice a substantial right of a party."  *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 504 (Fed. Cir. 1995).

---

[7]    Although we assume *arguendo* that CBP needed to consult with the SBA under 13 C.F.R. § 125.2(c)(2), we need not decide that issue to resolve this appeal, so we leave that question for another day.

Thus, to prevail in its bid protest, ARC must "show a significant, prejudicial error in the procurement process," meaning it must show that there is a greater-than-insignificant chance that CBP would have issued the 2018 RFQ as a set-aside for small businesses had it not committed the alleged errors. *Alfa Laval Separation, Inc.*, 175 F.3d at 1367.

The only alleged error in the procurement process ARC raises on appeal is CBP's failure to consult with the SBA during its market research under 13 C.F.R. § 125.2(c)(2). The Court of Federal Claims found that because "there appears to have been only one certified small business under NAICS Code 531210 at the time the 2018 RFQ was issued," CBP would not have issued the solicitation as a set-aside even if it had consulted with the SBA. J.A. 63. The court also noted that "a[n] SBA Procurement Center Representative concurred with CBP's decision to issue the 2018 RFQ as an unrestricted procurement under the FSS." *Id.* Thus, the Court of Federal Claims found that ARC failed to prove it was prejudiced by CBP's failure to consult with the SBA. That finding was not clearly erroneous.

Critical to the prejudice analysis here is CBP's decision to issue the 2018 RFQ under NAICS code 531210. Under 13 C.F.R. § 121.1103(b)(1), "[a]n appeal from a contracting officer's NAICS code or size standard designation must be served and filed [with the SBA's Office of Hearings and Appeals] within 10 calendar days after the issuance of the solicitation or amendment affecting the NAICS code or size standard." *See also* 13 C.F.R. § 121.402(d) ("The NAICS code assigned to a procurement and its corresponding size standard is final unless timely appealed to the SBA's Office of Hearings and Appeals . . . ."). Because ARC did not appeal CBP's NAICS code designation, ARC has waived any challenge to the NAICS code and cannot now claim that CBP should or would have chosen a different NAICS code had it consulted with the SBA. *See* 13 C.F.R. § 121.1102 ("The [Office of Hearings and Appeals] appeal is an

administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court.").

CBP's choice of NAICS code 531210 is fatal to ARC's claim of prejudice here.  The administrative record shows that when CBP issued the 2018 RFQ, only two businesses were listed as small business certified under NAICS code 531210: Choice Relocation Management and Sibcy Cline Relocation Services.  But GSA had informed CBP that "Sibcy Cline and Choice Relocation are both expiring this quarter."  J.A. 92.  So, as CBP explained to Mr. Bell, the DHS Small Business Advisor, "even [if] ARC were to be [a] small business . . . under NAICS 531210, there won't be enough small business[] vendors to meet the competition threshold."  *Id.*; *see also* FAR § 8.405-2(c)(iii) (requiring that, for proposed orders exceeding the simplified acquisition threshold and requiring a statement of work, the RFQ must be provided "to as many schedule contractors as practicable . . . to reasonably ensure that quotes will be received from at least three contractors that can fulfill the requirements").  Thus, the record shows that even if CBP had consulted with the SBA during its market research, it would not have issued the 2018 RFQ as a small business set-aside because there were not enough qualifying small businesses to compete under the applicable NAICS code.  ARC fails to point to any record evidence that suggests otherwise.  *See Bannum, Inc.*, 404 F.3d at 1357–58 (noting that "Bannum's argument rests on mere numerical possibility, not evidence").  And we find it significant that both the DHS Small Business Specialist and the SBA Procurement Center Representative concurred with CBP's decision to issue the solicitation unrestricted.

Given the administrative record before the agency, we find that even if CBP needed to consult with the SBA under 13 C.F.R. § 125.2(c)(2), which we do not decide here, ARC fails to show that CBP's failure to do so affected the outcome of its decision to issue the 2018 RFQ unrestricted.  As

a result, the Court of Federal Claims did not clearly err in finding that ARC failed to establish prejudicial error, and we affirm the court's dismissal of ARC's protest.

## III

We have considered the parties' remaining arguments and find them unpersuasive. We conclude that the Court of Federal Claims did not clearly err in finding that ARC failed to show it was prejudiced by CBP's failure to consult the SBA during the market research for the 2018 RFQ. Thus, we affirm the court's dismissal of ARC's bid protest.

**AFFIRMED**

No costs.