# United States Court of Appeals for the Federal Circuit

---

**OFFICE DESIGN GROUP,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CUNA SUPPLY, LLC,**
*Defendants-Appellees*

**GOVSOLUTIONS, INC.,**
*Defendant*

---

2019-1337

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01147-RHH, Senior Judge Robert H. Hodges, Jr.

---

Decided: March 6, 2020

---

JOSEPH ANTHONY WHITCOMB, Whitcomb, Selinsky, PC, Denver, CO, argued for plaintiff-appellant. Also represented by TIMOTHY TURNER.

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE.

MATTHEW THOMAS SCHOONOVER, Koprince Law LLC, Lawrence, KS, for defendant-appellee Cuna Supply, LLC.

————————————

Before LOURIE, REYNA, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

Office Design Group appeals from an order of the United States Court of Federal Claims granting judgment on the administrative record for the government and Cuna Supply, LLC. Because Office Design Group fails to establish that the government's evaluation of its proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.

I.

On May 5, 2017, the United States Department of Veterans Affairs ("VA") issued five Requests for Proposals ("RFP") for the provision of healthcare furniture and related services for VA facilities. The five RFPs were essentially identical, except that each related to a separate geographic region. Each RFP contemplated awarding three to five contracts for indefinite delivery, indefinite quantity, with each contract having a five-year base period and one five-year option period.

The RFP[1] established that the VA would award contracts based on a best-value trade off selection process that considered three primary evaluation factors: Technical Capability, Past Performance, and Price. The VA deemed

---

[1]    To simplify, this opinion will refer to RFP in the singular when discussing the RFPs' requirements and evaluation criteria.

Technical Capability more important than Past Performance, and Past Performance more important than Price.

Central to this appeal is Technical Capability subfactor 3. Subfactor 3 specified that an offeror's technical proposal must include a narrative "addressing each of the items listed under SV1, SV2, SV3, and SV4 as defined" in the Statement of Work ("SOW"). J.A. 128. SV1, SV2, SV3, and SV4 are codes corresponding to the specific services and products sought by the RFP. Subfactor 3 also required an offeror to address eight "key" elements, which included an offeror's staffing plan, inventory and cataloging process, personnel experience and qualifications, and process used for warranty repairs.

Subfactor 3 also provided that the VA would evaluate each offeror's technical volume of its proposal, i.e., its "technical proposal," based on the offeror's ability "to meet all services as defined in the Statement of Work." The RFP noted that an "unacceptable" rating for any technical subfactor would result in an overall "unacceptable" technical proposal. An offeror with an unacceptable Technical Capability subfactor was ineligible for a contract award.

The RFP also included "Attachment 15," an evaluation questionnaire containing thirty-three yes or no questions regarding the service requirements from the SOW and the eight key elements listed under subfactor 3. The questionnaire was divided into four sections, each corresponding to the four SOW sections—SV1, SV2, SV3, SV4. Reproduced below are the first seven questions of Attachment 15, which correspond to SV1 of the SOW.

Attachment 15
Service Technical Evaluation Questions

| *SV1 – Furniture, Design and Installation Support* |
|---|
| 1.  Did the Contractor provide a staffing plan? |
| 2.  Did the Contractor describe the qualifications and experience of the people who will provide the requested services? |
| 3.  Did the Contractor describe the process of inventory, cataloging and protecting VA property at the contractor's storage facility? |
| 4.  Did the Contractor describe the measures in place to protect from damage and against loss? |
| 5.  Did the Contractor provide a description of materials used and how they are applied to properly protect VA property during an installation? |
| 6.  Did the Contractor describe the process used to perform a walkthrough and document punch list items? |
| 7.  Did the Contractor describe the process used regarding a warranty repair? |

J.A. 166

In an amendment to the RFP, the VA clarified that Attachment 15 was to be used by the agency as a checklist to evaluate offerors' technical proposals. The amendment provided that "Attachment 8 Sample Project Tech Evaluation and Attachment 15 Service Technical Questions are informational only. *They are the checklists that will be used to evaluate the technical proposals.*" J.A. 141 (emphasis added).

During contract evaluation, the VA assigned an offeror 2 points for each question in Attachment 15 that the offeror sufficiently addressed in its technical proposal. To receive a passing score for its technical proposal, an offeror needed to receive a minimum of 40 points, i.e., a "yes" for twenty of the thirty-three questions in Attachment 15.

Office Design Group ("ODG") submitted a proposal for all five regions. The VA assigned ODG an unacceptable rating for its technical proposal, rendering ODG's overall proposal ineligible for award. The VA noted in its evaluation report that it was only able to locate responses to six of the thirty-three questions in Attachment 15 in ODG's technical proposal, resulting in a failing score of 12 points. The VA explained that ODG's technical proposal "lacked detail" and contained "vague info." J.A. 120. The VA also

noted that ODG's technical proposal failed to address the following seven SOW service requirements:  (1) a staffing plan, (2) information regarding inventory, cataloging, and protecting VA property information, (3) information about protecting furniture from damage and loss, (4) information about executing a warranty, (5) information about providing AUTOCAD or PDF files, (6) information about its team members' experience in the healthcare and federal industries, and (7) information about whether its personnel had knowledge about life safety, infection control, and patient privacy standards.

The VA awarded contracts to nine offerors under each of the five RFPs. Each of the awardees earned at least 40 points for its technical proposal.

ODG filed a bid protest before the Government Accountability Office ("GAO"), alleging that the VA (1) unreasonably and disparately evaluated its technical proposal in comparison to the awardees' technical proposals and (2) improperly relied on Attachment 15 to evaluate its technical proposal.  The GAO denied ODG's protest on both grounds.  ODG then filed a bid protest before the Claims Court, alleging the same two grounds.[2] The Claims Court determined that the VA's use of Attachment 15 was proper and that ODG had not shown that the VA's alleged disparate treatment was prejudicial error.   The Claims Court denied ODG's motion for judgment on the administrative record and granted the government's and the defendant-intervenor's cross-motion for judgment on the administrative record. ODG timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

---

[2]    ODG also alleged in the Claims Court that four of these offerors colluded and provided substantially the same technical proposal. ODG, however, does not raise the collusion issue on appeal.

## DISCUSSION

We review the grant of a motion for judgment on the administrative record in a bid protest action de novo. *Glenn Defense Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). In a bid protest case, the inquiry is whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and if so whether the error is prejudicial." *Id.*; *see also Alabama Aircraft Indus., Inc. Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009). "The court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)).

On appeal, ODG raises the same two challenges it raised before the GAO and the Claims Court. First, ODG argues that the VA's reliance on Attachment 15 during the evaluation process was inconsistent with the terms of the RFP. Second, ODG argues that the VA disparately evaluated its technical proposal in comparison to those of various awardees. We address each argument in turn.

## I.

ODG argues that the VA unreasonably strayed from the terms of the RFP by relying on Attachment 15 to evaluate its technical proposal. According to ODG, "the problem for the VA, is that it never announced . . . that it planned to use responses to Attachment 15 . . . as the rubric against which proposals were scored and evaluated." Appellant's Br. 13. We reject this argument.

The VA informed all offerors, including ODG, that Attachment 15 would be used to evaluate technical proposals. An amendment to the RFP noted that Attachment 15 was to be used as a "checklist[]" that "will be used to evaluate

the technical proposals." J.A. 141. Thus, contrary to ODG's contention, the record establishes that the VA provided clear, reasonable notice that the VA planned to use Attachment 15 to evaluate proposals.

## II.

ODG argues that the VA disparately evaluated its technical proposal. According to ODG, although its technical proposal was sufficiently similar to the awardees' proposals, the VA improperly assigned ODG's technical proposal a failing score. ODG provides seven examples of the VA's alleged disparate treatment of its technical proposal.

The Federal Acquisition Regulation requires an agency to treat offerors fairly and impartially. 48 C.F.R. § 1.602–2(b) ("Contracting officers shall . . . ensure that contractors receive impartial, fair, and equitable treatment."). This obligation necessarily encompasses an agency's obligation to fairly and impartially evaluate all proposals. Equal evaluation of proposals, however, does not translate into identical evaluations. An agency is under no obligation to assign dissimilar proposals the same evaluation rating. 48 C.F.R. § 1.102–2(c)(3) ("All contractors and prospective contractors shall be treated fairly and impartially *but need not be treated the same*." (emphasis added)).

Upon review, it appears that this court has not yet articulated a standard for evaluating disparate evaluation claims. The Claims Court, however, has done so, having adjudicated numerous disparate evaluation claims. To prevail at the Claims Court, a protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were "substantively indistinguishable" or nearly identical from those contained in other proposals. *See Enhanced Veterans Solutions, Inc. v. United States*, 131 Fed. Cl. 565, 588 (2017); *see also Red River Comput. Co. v. United States*, 120 Fed. Cl. 227, 238 (2015); *Sci. Applications Int'l Corp. v. United States*, 108 Fed. Cl. 235, 272

(2012); *Chenega Mgmt., LLC v. United States*, 96 Fed. Cl. 556, 585 (2010); *Hamilton Sundstrand Power Sys. v. United States*, 75 Fed. Cl. 512, 516 (2007).[3]  A protestor may also prevail by showing that the agency inconsistently applied objective solicitation requirements between it and other offerors, such as proposal page limits, formatting requirements, or submission deadlines. *See Sci. Applications Int'l Corp.*, 108 Fed. Cl. at 272 (citing *BayFirst Sols., LLC v. United States*, 102 Fed. Cl. 677 (2012)).

We see no reason to depart from the Claims Court's "substantively indistinguishable" standard.  If a protestor meets this threshold, a reviewing court can then comparatively and appropriately analyze the agency's treatment of proposals without interfering with the agency's broad discretion in these matters. *See, e.g.*, *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1384 (Fed. Cir. 2012).  If a protestor does not, then the court should dismiss the claim.  To allow otherwise would give a court free reign to second-guess the agency's discretionary determinations underlying its technical ratings.  This is not the court's role. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 440 (Fed. Cir. 1996)

---

[3]    Several of the above-cited Claims Court cases address disparate evaluation claims in the context of competitive range determinations.  An agency may select a competitive range of proposals that have been more highly ranked to continue in the competition. 48 C.F.R. § 15.306(c)(1).  Proposals that have not met the competitive range threshold are eliminated from the competition. 48 C.F.R. § 15.306(c)(4).  We see no relevant difference for purposes of disparate evaluation claims whether the alleged disparate evaluation occurred at the threshold competitive range determination or at the ultimate award decision. An agency is obligated to fairly evaluate proposals at both stages. *See* 48 C.F.R. § 1.102–2(c)(3); 48 C.F.R. § 1.602–2(b).

(noting that the court "will not second guess" the "minutiae of the procurement process in such matters as technical ratings . . . , which involve discretionary determinations of procurement officials").

The record indicates that ODG's proposal was substantively distinguishable from other proposals in various respects.[4] The RFP required offerors to provide a description of their interior designer's "experience and qualifications working on healthcare facilities and what hardware and software that will be used to produce digital and hard copy drawings." J.A. 131. Unlike the awardees' proposals, ODG's proposal did not address the hardware and software requirements. *Compare* J.A. 94-100, *with* J.A. 32.

The RFP also required an offeror to describe the "experience of the installation staff and Interior Design staff" as well as their "knowledge regarding life safety codes, infection control standards and patient privacy standards." J.A. 131. Unlike the awardees' proposals, ODG's proposal did not address whether its staff had experience with life safety codes, infection control standards, and patient privacy standards. *Compare* J.A. 94-100, *with* J.A. 25-26, 55, 88.

The RFP required offerors to provide a staffing plan that included its key personnel's qualifications and experience in a healthcare environment. But, as the Claims Court found, ODG submitted a staffing plan "that could not be compared to others." J.A. 7. The Claims Court also noted that ODG's proposal said "little of the staff's qualifications in healthcare," and that the comparators' proposals were "more responsive and descriptive." *Id.*

The RFP required offerors to describe the "technical capabilities of staff producing AutoCAD and/or PDF

---

[4]    ODG makes no allegation that the VA inconsistently applied objective solicitation requirements.

drawings of the as-built furniture installation." J.A. 131. Unlike the awardees' proposals, ODG did not address whether its staff will use AutoCAD or PDF to produce drawings. *Compare* J.A. 94-100, *with* J.A. 30, 55, 71, 88.

In light of these substantive differences, ODG cannot prevail on most of its claims of disparate treatment. ODG, however, has sufficiently established that the VA disparately evaluated its technical proposal in two instances. Both ODG and awardee A. Pomerantz failed to provide a (1) description of the process of inventory, cataloging and protecting VA property and (2) description of materials used and how they are applied to protect VA property during installation. The VA assigned 6 points to this awardee as if it had provided this information yet did not assign ODG any points.

To prevail, ODG must show that this instance of unequal treatment was prejudicial. *Glenn Def. Marine (ASIA)*, 720 F.3d at 907. To establish prejudicial error, a protestor must show that but for that error, the protestor had a substantial chance of receiving a contract award. *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999). *De minimis* errors in the procurement process do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 960 (Fed. Cir. 1993). Prejudice is a question of fact that we review for clear error. *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1359 (Fed. Cir. 2018).

The Claims Court found that ODG was not prejudiced by the VA's disparate treatment. We see no error in this finding. Even if the VA awarded ODG the additional 6 points it afforded to the awardee, ODG's technical score would only increase to 18 points, well below the acceptable 40-point threshold for award.

In sum, many of ODG's various claims of disparate treatment amount to a request for this court to reevaluate

its technical proposal and those of the various awardees. We are in no position to do so.  For the few instances in which the VA did engage in disparate treatment, ODG has failed to establish that such error was prejudicial.

CONCLUSION

We have considered ODG's other arguments and find them unpersuasive.  We affirm.

**AFFIRMED**

COSTS

No costs.