NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ZAFER TAAHUT, INSAAT VE TICARET A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, WARBUD SKE JOINT VENTURE,**
*Defendants-Appellees*

---

2020-1726

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-00041-VJW, Senior Judge Victor J. Wolski.

---

Decided: March 11, 2021

---

SAM GDANSKI, Gdanski & Gdanski LLP, Teaneck, NJ, for plaintiff-appellant.

STEVEN MICHAEL MAGER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee United States. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE; HERBERT JAMES ALDRIDGE, II, Europe District, United States Army Corps of Engineers, APO, AE; MEGAN JAYE TOOMAN, El Paso, TX.

WILLIAM FRANCIS SAVARINO, Cordatis LLP, Arlington, VA, for defendant-appellee Warbud SKE Joint Venture. Also represented by JOSHUA SCHNELL.

_____

Before LOURIE, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, Circuit Judge.

This case is about a bid protest. Zafer Taahut, Insaat Ve Ticaret A.S. ("Zafer") appeals from an order of the United States Court of Federal Claims ("Claims Court") granting judgment on the administrative record in favor of the government and Warbud SKE Joint Venture ("Warbud"). Because Zafer fails to establish that the award of the contract to Warbud was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we *affirm* the Claims Court's judgment.

## I. BACKGROUND

### A. Factual Background

In February 2019, the United States Army Corp of Engineers ("Army Corps" or "agency") sought proposals for a firm-fixed price contract for construction of facilities at the North Atlantic Treaty Organization's ("NATO") Long-Term Equipment Storage and Maintenance Complex at Powidz Air Base, Poland. The Solicitation provided "Instructions to Proposers," which set forth the requirements for the preparation and submission of proposals. Proposals were to be submitted in two volumes: Volume I and Volume II. Volume I included four technical factors: past performance, management plan, technical approach narrative and schedule, and national competitive bidding requirements ("NCB requirements"). Volume II included price and various administrative requirements. The instructions also required that, for proposals submitted as Joint Ventures, "the experience, past performance, and management

approach of each of the Joint Venture Partners can be submitted for the Joint Venture Entity" and "[t]he experience for each Joint Venture Partner will be considered the experience of the Joint Venture entity." J.A. 16328.

The Solicitation provided that the Army Corps would use the "Best Value Tradeoff Process for Source Selection" in accordance with Federal Acquisition Regulation ("FAR") 15.101-1. J.A. 16342. That process "permits tradeoffs among cost or price and non-cost factors" and results in a contract award to the "offeror who demonstrates the best value to the Government, considering all non-price (technical) and price factors." J.A. 16172, 16342. Consistent with FAR 15.304(e), the combined non-price factors were treated as equal in importance to price. J.A. 16342.

As to the evaluation approach, the Solicitation provided that past performance would be rated as one factor based on up to five past projects submitted by the offeror. To determine the overall past performance rating, the agency would evaluate the recency and relevance of the projects, looking for similarities to the Solicitation in the scope and magnitude of effort and complexities of the project. The agency would then evaluate the "quality" of performance. Based on these elements, an offeror would receive an overall confidence assessment rating.

The Solicitation defined "recent" projects as those which had been completed within six years of the Solicitation issue date or projects that were currently being performed and at least 50% complete. Projects completed more than six years prior to the issue date could still be considered, but might be deemed less relevant. The Solicitation indicated that relevant projects are those that had the following qualities:

> (i) Projects that involve sourcing and managing labor on large projects in remote locations.

(ii) Projects located within Poland and/or the European Union (EU).

(iii) Projects with a construction cost of $100,000,000–$250,000,000.

(iv) Projects consisting of experience with new construction to include major building systems (architectural, electrical, mechanical, structural and civil).

(v) Projects demonstrating that the offeror's team members . . . have previously worked together are considered more relevant, especially where the roles were similar to those that are proposed for this work.

(vi) Project[s] demonstrating the procurement of materials, supplies and equipment similar in magnitude, scope, complexity and timelines to the work required under this solicitation.

(vii) Projects for the U.S. military, U.S. Department of Defense or the military or Ministry of Defense of a NATO member nation, or projects for or funded by NATO.

J.A. 16344.

Each project submitted for past performance received an adjectival relevancy rating, ranging from Not Relevant to Very Relevant. A project involving "essentially the same scope and magnitude of effort and complexities" as required by the Solicitation received a rating of Very Relevant. J.A. 16343. A past project with a "similar scope and magnitude" to the Solicitation received a rating of Relevant. *Id.* Past projects involving "some" or "little or none" of the scope and magnitude of the Solicitation received ratings of Somewhat Relevant and Not Relevant, respectively. J.A. 16344.

The agency then evaluated the "quality" of the offeror's past performance to assign an overall confidence assessment rating. In doing so, the agency considered the quality of the offeror's performance, schedule/timeliness of performance, customer satisfaction, management personnel/labor, cost/financial management, safety/security, and other general considerations. Each offeror was then assigned an adjectival rating for past performance. In relevant part, a rating of Substantial Confidence indicated that "the Government has a high expectation that the offeror will successfully perform the required effort." Gov't Br. 10. A rating of Satisfactory Confidence, on the other hand, indicated that the government only had a "reasonable expectation" of the offeror's successful performance based on past performance. *Id.*

The Solicitation was amended several times. Relevant to this appeal, the Solicitation was amended to specify that offerors were required to submit their proposals by August 7, 2019. J.A. 22781. Shortly before that deadline, however, Warbud and another bidder notified the contract specialist that they were having difficulties uploading documents to the site. Given these issues, the contracting officer determined that it was in the best interest of the government to extend the proposal due date by one day. The contract specialist posted notification of the amendment before the initial deadline lapsed on August 7, and sent a follow-up email to all interested offerors. Due to technical difficulties with the system, however, the amendment was not posted until after the deadline.

The source selection evaluation board ("SSEB") received six proposals by the final due date of August 8, 2019. Each of the three voting members of the SSEB, all Army Corps personnel with technical skills relevant to the Solicitation, completed an independent review of each proposal and then a consensus meeting was held. At the meeting, the members of the SSEB reached a consensus rating for each factor of each proposal. The contracting officer

conducted price analysis of all the submitted proposals, including comparison of the proposed prices received in response to the Solicitation and comparison of prices with the independent government estimate.   48 C.F.R. § 15.401-1(b)(2).

Initially, Zafer was given consensus ratings of Satisfactory Confidence for past performance, Good for management plan and technical approach and schedule, and Acceptable for NCB requirements.  Warbud was given consensus ratings of Satisfactory Confidence for past performance, Unacceptable for management plan, Outstanding for technical approach and schedule, and Acceptable for NCB requirements. *Id.*  Based on these findings from the SSEB and the price analysis, the contracting officer decided to open discussions.

In accordance with FAR 15.306(c), the agency made a competitive range determination, and determined that all six offerors were within the competitive range.  All six offerors were therefore provided the opportunity to submit revised proposals for the SSEB to evaluate.  Based on those revised proposals, Zafer's ratings were unchanged.  Warbud received the same ratings as before, with the exception of a new rating of Outstanding for management plan.  The contracting officer also conducted a price analysis of the revised prices.  Zafer's final proposed price was slightly lower than that of Warbud.

The source selection advisory council ("SSAC"), comprised of senior leaders within Army Corps' Europe District, reviewed the SSEB reports and price negotiation memorandum, along with the proposals submitted.  The SSAC issued a report, signed October 8, 2019, finding that Warbud's proposal offered advantages over the other offerors in past performance, management plan, and technical approach and schedule.  The SSAC considered it valuable to pay a reasonable price premium for a "superior technical proposal that reduces risk of both project cost and time

growth," and therefore recommended an award to Warbud. J.A. 22145.

In its analysis, the SSAC compared Warbud to other offerors, and compared Zafer to another offeror with similar non-price factor ratings. After analyzing the proposals, the SSAC found that Zafer offered a slight technical advantage over the other similarly rated offeror, but at a higher price. Accordingly, the SSAC concluded that Zafer's proposal did not offer a technical advantage "significant enough to warrant paying a price premium" over the other offeror. As a result, the SSAC eliminated Zafer from consideration. J.A. 22143.

The SSA reviewed the findings of the SSEB and SSAC to ensure that they followed the evaluation criteria and that the ratings were consistently applied. The SSA agreed with the final ratings for Zafer and Warbud. It also conducted an independent review and best value analysis based on the SSEB's findings, and concluded that Warbud's proposal offered the best value to the government. Accordingly, on November 14, 2019, the Army Corps awarded the contract to Warbud.

## B. Procedural History

On November 27, 2019, Zafer filed a protest with the Government Accountability Office ("GAO"), challenging the agency's technical evaluation ratings and its best value determination. Zafer withdrew its GAO protest on January 6, 2020.

On January 14, 2020, Zafer filed a protest with the Claims Court. Two days later, the Claims Court granted the government's motion for a voluntary remand to allow the Army Corps to reconsider and further document its award decision. At the conclusion of the remand, the SSA issued a new source-selection decision reaffirming its decision that Warbud's proposal represented the best value to the government.

The parties cross-moved for judgment on the administrative record, and the Claims Court held oral argument on March 30, 2020. The following day, the Claims Court issued its opinion from the bench and entered judgment in favor of the government and Warbud. Warbud has been performing the contract since the court's March 30, 2020 decision.

Zafer timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We review the grant of a motion for judgment on the administrative record in a bid protest action de novo. *Glenn Def. Marine (Asia), Pte. Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). In a bid protest case, the inquiry is whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and if so whether the error is prejudicial." *Id.* "The court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)).

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks and citation omitted). The protestor bears the burden of demonstrating that an agency's action was unreasonable. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996). We have held that "*[d]e minimis* errors in the procurement process do not justify relief." *Glenn Def. Marine*, 720 F.3d at 907.

On appeal, Zafer raises two challenges to the Claims Court's decision. First, it argues that Warbud's proposal was late and therefore should have been rejected. Second, Zafer submits that the agency engaged in unequal treatment of offerors when it assessed past performance. We address each argument in turn.

## A.  Deadline Extension

As to the first issue, although Zafer alleges that Warbud's proposal was late, the Claims Court correctly concluded that the Army Corps reasonably extended the deadline by one day to ensure that all interested offerors were able to submit their proposals. Zafer argues, as it did before the Claims Court, that the Army Corps extended the deadline for the receipt of proposals *after* the deadline had already passed. After careful review of the record, however, the Claims Court found that the agency properly extended the deadline *prior* to the expiration of the time for proposal. We find no error in the court's analysis.

Although the Army Corps posted notification of the extended deadline and emailed notification to all offerors prior to the expiration of the original deadline, system errors caused the amendment to be posted to the site shortly after the deadline had passed. But, because the contracting officer made the decision and communicated it to all offerors prior to the deadline, the Claims Court found that the delay in posting the actual amendment did not affect the validity of the one-day extension. J.A. 13. We agree with the Claims Court that the contracting officer made the decision to extend the deadline in a timely manner and that doing so was within his discretion. *See Impresa*, 238 F.3d at 1332 (recognizing that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process" (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)).

Zafer claims that the record contains no evidence that there were problems uploading documents to the site. But the contracting officer explained in his declaration that more than one offeror reported difficulty in attempting to upload their proposals. Indeed, the Army Corp itself experienced problems in attempting to upload documents. Given these issues, the contracting officer explained that the Army Corps decided to extend the submission deadline to allow all interested offerors the opportunity to submit. Therefore, despite Zafer's suggestion to the contrary, the record supports the Claims Court's finding that there were technical difficulties supporting the Army Corps' extension. As such, we find no error in the Claims Court's determination that, given the "technical problems with the government's FBO site and not problems that were owing to any delinquencies or deficiencies on the part of the offerors, the contracting officer reasonably decided before the deadline to extend the deadline." J.A. 12.

Zafer implies that the Army Corps acted in bad faith in extending the proposal deadline for the benefit of a single offeror: Warbud. As the Claims Court found, however, nothing in the record "supports the argument that there was any impermissible motive or favoritism or anything improper in the extension of the deadline." J.A. 11. Nor was there any evidence of "improper motivation on the part of the contracting officer." J.A. 13. As the contracting officer explained in his declaration, he "did not think that it was fair, or, in the best interest of the Government, to exclude potentially qualified offerors from the opportunity to submit a proposal because of technical difficulties with a Government system." J.A. 22782. And, the evidence was that more than one offeror complained of difficulties submitting the proposal. As the Claims Court found, the decision to extend the deadline was fair, reasonable, and made in a timely manner.

We find no error in the Claims Court's determination that the Army Corps properly extended the proposal

deadline by one day.  Because Warbud's proposal was up-
loaded prior to expiration of the extended deadline, it was
timely filed.

### B.  Past Performance Evaluation

As to Zafer's second argument on appeal—that the
agency unreasonably evaluated past performance—the
Claims Court found that the SSA reasonably rated Zafer's
past-performance proposal as Satisfactory Confidence, ra-
ther than Substantial Confidence.  The Solicitation di-
rected offerors to submit up to five past-performance
projects for evaluation.  Under the evaluation criteria, the
SSA considered the recency, relevancy, and quality of each
offeror's past projects.  After evaluating Zafer's past-perfor-
mance proposal, the SSA gave Zafer a Satisfactory Confi-
dence rating because the government had a "reasonable
expectation" of successful performance, rather than the
"high expectation" of successful performance required for a
Substantial Confidence rating.  J.A. 22745.

"It is well-established that contracting officers have a
great deal of discretion in making contract award deci-
sions, particularly when, as here, the contract is to be
awarded to the bidder or bidders that will provide the
agency with the best value." *Banknote Corp. of Am. v.
United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004) (cita-
tions omitted).  We have recognized that evaluation of past
performance is a matter within the discretion of the con-
tracting agency and that the "agency's reasonable interpre-
tation of the facts is entitled to considerable deference."
*Glenn Def. Marine*, 720 F.3d at 910.

On appeal, Zafer argues that the Army Corps "applied
different ratings to bids which were not only substantively
similar, but which were actually identical." Appellant's Br.
11.  According to Zafer, the agency erred when it: (1) deter-
mined that Zafer's past-performance projects 1 and 2 were
"Relevant" instead of "Very Relevant;" (2) treated "Zafer's
project in Bagram Afghanistan as not being remote," while

crediting another offeror for having a project in the same locality; and (3) evaluated different joint venture structures differently. *Id.* at 14–22. As explained below, Zafer's arguments are without merit.

First, the Claims Court examined the record and concluded that the SSA reasonably assessed Zafer's projects 1 and 2. Although Zafer continues to argue on appeal that the SSA should have found these projects "Very Relevant," the SSA's "determination of relevance is owed deference as it is among 'the minutiae of the procurement process,' which this court 'will not second guess.'" *Glenn Def. Marine*, 720 F.3d at 911 (quoting *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). We decline to second-guess or otherwise disturb the SSA's reasonable and discretionary relevance determination.

Second, to prevail on an unequal treatment claim, a "protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals." *Office Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020) (citations omitted). Zafer argues that the SSA "negatively rated" project 5— which related to work Zafer performed at Bagram Air Base in Afghanistan—for not being "remote," but gave credit to another offeror for a Bagram project. Appellant's Br. 17. But the Claims Court found that the SSA did not negatively rate Zafer project 5 solely on remoteness grounds. J.A. 16–19. Nor did the SSA credit the other offeror merely for having a project in the same "remote" locality. *Id.* Zafer oversimplifies the applicable past performance criteria, which focused on the substantive nature of the project in addition to its location. Specifically, the Solicitation indicated that, in assessing past performance, relevant projects include those that "involve sourcing and managing labor on large projects in remote locations." J.A. 16344. The SSA found that project 5 was "somewhat relevant" in that it met four of the seven criteria for relevancy. J.A. 22743. But

project 5 did not involve "sourcing and managing labor on large projects," regardless of how remote the location may have been. *See id.* The fact that another offeror's Bagram project satisfied this criteria does not indicate disparate treatment. Instead, as the Claims Court concluded, it means that these two projects were substantively distinguishable. J.A. 17–18 (citing *Office Design Grp.*, 951 F.3d at 1373).

Finally, the Claims Court found that the SSA reasonably evaluated the past performance of the joint venture offerors. As noted, the Solicitation provided that "the experience, past performance, and management approach of each of the Joint Venture Partners can be submitted for the Joint Venture Entity." J.A. 16328. In addition, "[t]he experience of each Joint Venture Partner will be considered the experience of the Joint Venture entity." *Id.* Given this language, the Claims Court concluded that the SSA reasonably rated Warbud's past performance, including past projects that were joint ventures. J.A. 19–22.

On appeal, Zafer repeats its argument that the SSA "cannot use other joint venture projects consisting of only one of the joint venture bidders." Appellant's Br. 20. But nothing in the Solicitation restricted the SSA from considering these types of joint venture projects. Rather, as the Claims Court held, the Army Corps evaluated the joint venture offerors consistent with the evaluation criteria. J.A. 20. And, although Zafer argues that the Army Corps "applied a double standard" when rating the Warbud joint venture compared to others, the Claims Court considered these arguments and expressly found that the other offers were distinguishable. J.A. 21. We find no error in that determination.

## III. CONCLUSION

We have considered Zafer's remaining arguments and find them unpersuasive. Accordingly, we *affirm* the Claim Court's judgment in favor of the government and Warbud.

**AFFIRMED**