# United States Court of Appeals for the Federal Circuit

---

**OBSIDIAN SOLUTIONS GROUP, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1836

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01602-RAH, Judge Richard A. Hertling.

---

Decided: December 8, 2022

---

MILTON C. JOHNS, Executive Law Partners, PLLC, Fairfax, VA, argued for plaintiff-appellant.

STEVEN C. HOUGH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. McCARTHY.

---

Before REYNA, HUGHES, and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Obsidian Solutions Group, LLC appeals a decision of the United States Court of Federal Claims granting judgment on the administrative record. The court held that the Office of Hearings and Appeals did not act arbitrarily or capriciously in determining Obsidian was not a small business. We affirm.

I

On April 19, 2019, the Department of Energy (DOE) issued a solicitation for Technical Security, Communications Security, Cyber, Analysis and Security Administration. The solicitation was designated as a small business set-aside, and the size limit for interested businesses was a maximum of $20.5 million in average annual receipts. Obsidian submitted a bid proposal on July 18, 2019. At the time, Obsidian self-certified as a small business based on its five-year average of annual receipts (roughly $17.5 million). On September 2, 2020, the DOE notified Obsidian that it was the apparent successful offeror but that the DOE would submit a request to the Small Business Administration (SBA) to confirm Obsidian's size status before making the award.

On September 10, 2020, the SBA determined Obsidian did not qualify as a small business for the purposes of the solicitation. Rather than use the five-year average of receipts, the SBA used Obsidian's three-year average (roughly $21.8 million), which exceeded the $20.5 million limit. Because of the SBA's adverse size determination, the DOE did not award the procurement to Obsidian.

After the Office of Hearings and Appeals (OHA) affirmed the SBA's size determination, Obsidian filed a bid protest in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(b). Obsidian argued that the size determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because the

SBA was required to start using five years of annual receipts on December 17, 2018, the effective date of the Runway Extension Act (REA). Suppl. App. 25–26 (quoting 5 U.S.C. § 706(2)(A)). In addition to bid preparation and proposal costs, Obsidian requested injunctive relief, including that the court set aside the size determination; declare that Obsidian is a small business; and reinstate Obsidian as the apparent awardee. Suppl. App. 29–30. The Court of Federal Claims granted the United States' motion for judgment on the administrative record and denied Obsidian's cross-motion because the REA clearly and unambiguously did not apply to the SBA. *Obsidian Sols. Grp., LLC v. United States*, 153 Fed. Cl. 334, 344–45 (2021). Because Obsidian did not succeed on the merits, the trial court denied Obsidian's requested relief. *Id.* at 345.

Obsidian appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review judgment on the administrative record in a bid protest action de novo. *Off. Design Grp. v. United States*, 951 F.3d 1366, 1371 (Fed. Cir. 2020). We review denial of injunctive relief for abuse of discretion. *Nichia Corp. v. Everlight Ams., Inc.*, 855 F.3d 1328, 1340 (Fed. Cir. 2017).

## A

At issue is whether the REA's amendment to Section 3(a)(2) of the Small Business Act (15 U.S.C. § 632(a)(2)), and in particular, its requirement to use a five-year average of receipts for purposes of size determinations, was immediately binding on the SBA. Before the REA was enacted in 2018, Section 3(a)(2) of the Small Business Act read, in relevant part:

### (A) In general

In addition to the criteria specified in paragraph (1), the [SBA] Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act.

### (B) Additional criteria

The standards described in paragraph (1) may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors.

### (C) Requirements

Unless specifically authorized by statute, no Federal department or agency may prescribe a size standard for categorizing a business concern as a small business concern, unless such proposed size standard—

(i) is proposed after an opportunity for public notice and comment;

(ii) provides for determining—

. . .

(II) the size of a business concern providing services on the basis of the annual average gross receipts of the business concern over a period of not less than 3 years;

. . .; [and]

(iii) is approved by the [SBA] Administrator.

15 U.S.C. § 632(a)(2)(A)–(C) (2018).

The SBA has long interpreted subsection (C) as applying to only *non*-SBA agency size standards—*not* to SBA

size standards promulgated under subsections (A) and (B). Small Business Size Standards: Calculation of Annual Average Receipts, 84 Fed. Reg. 29399, 29399 (June 24, 2019). The SBA repeated this interpretation in the Federal Register more than 50 times in the two decades before the enactment of the REA. 84 Fed. Reg. at 29400. Thus, although the SBA used a three-year average for size determinations, it did so pursuant to the authority granted in subsection (A), not the requirement in (C). *E.g.*, 13 C.F.R. § 121 (1990) (citing 15 U.S.C. § 632(a) for its authority to set size standards and using three years of annual receipts).

B

Effective December 17, 2018, Congress passed the REA, an amendment that made a single change to Section 3(a)(2): it changed "3 years" in subsection (C)(ii)(II) to "5 years." Small Business Runway Extension Act of 2018, Pub. L. No. 115-324. The REA did not amend subsections (A) or (B) or any other language in subsection (C). *Id.*

After the REA became effective, the SBA restated its longstanding interpretation that subsection (C) did not apply to the SBA. 84 Fed. Reg. at 29399. Nonetheless, to promote consistency between the SBA and non-SBA agencies, the SBA proposed a rule change on June 24, 2019. *Id.* at 29400. The proposed rule would change the SBA's existing three-year averaging period to a five-year period. *Id.* The SBA clarified that, because size is determined as of the date a firm certifies its size with its initial bid, the three-year period would continue to apply for all bids submitted before the effective date of the final rule. *Id.* at 29401. After a notice-and-comment period, the final rule took effect on January 6, 2020. Small Business Size Standards: Calculation of Annual Average Receipts, 84 Fed. Reg. 66561 (Dec. 5, 2019).

The SBA's proposed rule was not yet final when Obsidian submitted its proposal in July 2019. In making its size determination, the SBA explained that Obsidian's size

must be calculated on a three-year basis rather than a five-year basis because the governing SBA regulation at the time of submission was the three-year rule.

## C

Effective January 1, 2022, Congress amended Section 3(a)(2) again, this time explicitly stating in subparagraph (C) that "no Federal department or agency *(including the Administration when acting pursuant to subparagraph (A))* may prescribe a size standard" inconsistent with the five-year averaging requirement. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, 134 Stat. 3388, 3784 (the "2022 amendment") (emphasis added). The amendment also explicitly altered subsection (A), adding that *the Administrator* is "subject to the requirements specified under subparagraph (C)." *Id.* Congress made the 2022 amendment effective one year after the date of enactment and did not purport to apply this amendment retroactively. *Id.*

## III

Obsidian relies on three arguments, all of which must be true for its bid protest to succeed: (1) the REA applied to the SBA, (2) the REA required a five-year rule to go into effect immediately upon the REA's December 2018 effective date, and (3) no notice-and-comment rulemaking was required for the SBA to start using the five-year rule. We need only address the first issue because it is dispositive.

When tasked with interpreting a statute, we start by exhausting all traditional tools of interpretation to determine its meaning. The starting point is the text itself. *United States v. Hohri,* 482 U.S. 64, 69 (1987). We do not look at the text in a vacuum, but rather, we must consider the words "in their context and with a view to their place in the overall statutory scheme." *King v. Burwell,* 576 U.S. 473, 486 (2015) (cleaned up).

The REA changed a single word in Section 3(a)(2). We consider that change in the overall structure of the entire provision, which includes three subsections. First, subsection (A) authorized the SBA Administrator to "specify detailed definitions or standards" for determining size status. 15 U.S.C. § 632(a)(2)(A) (2018). Second, subsection (B) granted discretion to the SBA—in exercising this authority—to use enumerated "or other appropriate factors" in establishing size standards. *Id.* § 632(a)(2)(B). Third, subsection (C) made the broad authority of the first two subsections unique to the SBA by prohibiting any other department or agency from prescribing its own size standards without first meeting more stringent requirements and getting approval from the SBA Administrator. The text of subsection (C) provided: "*[u]nless specifically authorized by statute,* no Federal department or agency may prescribe a size standard" unless it met the more stringent subsection (C) requirements and was "*approved by the [SBA] Administrator.*" *Id.* § 632(a)(2)(C) (emphases added).

The meaning of this language and structure is clear. Congress created not one but *two* subsections discussing size factors. The SBA was given its own, broader limitations on establishing size standards in subsection (B) than other agencies were given in subsection (C). Subsection (C) provided similar categories as subsection (B) but set more stringent requirements within those categories. If Congress had intended the SBA to be bound by the more stringent requirements applicable to other agencies, it could have created a single subsection outlining these categories. Instead, Congress made the broader authority of the SBA unique by making subsection (B) applicable to the SBA and by making other agencies subject to the stricter requirements of subsection (C).

Obsidian argues that the phrase "no Federal department or agency may prescribe a size standard" makes clear that subsection (C) applies to *all* agencies, including the SBA. But this argument reads out the rest of the text. First,

by including the text "[u]nless specifically authorized by statute," Congress exempted the SBA from the group of Federal departments or agencies limited by subsection (C). The SBA was *specifically authorized by statute* in subsection (A) to specify its own standards. Second, subsection (C) concluded with the additional requirement that any size standards prescribed by other agencies must be "approved by the [SBA] Administrator." The natural reading of this text, absent language to the contrary, is that subsection (C) restricts any non-SBA agency from promulgating its own size standards without first getting approval from the SBA Administrator.

The REA did not change *any* of this language. Nor did the REA change the structure of the provision. To the contrary, the REA changed only a single word in subsection (C)—a subsection Congress should have known did not apply to the SBA. "Congress is presumed to be aware of an administrative . . . interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009) (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)). Prior to the enactment of the REA, the SBA published repeated and regular notices of its longstanding interpretation that subsection (C) did not apply to the SBA. 84 Fed. Reg. at 29400. Despite being on notice of this interpretation, Congress chose *not* to extend subsection (C) in the REA.

This is in stark contrast to Congress's later amendment to the Small Business Act. Unlike the REA, the 2022 amendment to subsections (A) and (C) *did* explicitly change the language of the statute to make subsection (C) applicable to the SBA. Pub. L. No. 116-283, 134 Stat. 3388, 3784 (2021). Congress added a limitation on the SBA's authority in subparagraph (A): "and subject to the requirements specified under subparagraph (C)." *Id.* Then, it amended subparagraph (C) to reflect that change: "(including the Administration when acting pursuant to subparagraph

(A)).” *Id.* When Congress amends a statute, it raises a presumption that the legislature intended to substantively change, not simply clarify, the law. *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (“When Congress amends legislation, courts must ‘presume it intends [the change] to have real and substantial effect.’” (alteration in original) (citation omitted)); Shambie Singer, *Sutherland Statutes and Statutory Construction* § 22.1 (7th ed. 2021). And that presumption is strengthened here by the fact that Congress delayed the effective date by a year to January 1, 2022, and nowhere suggested that the amendment was retroactive. Thus, unlike the REA, the 2022 amendment made substantive changes to Section 3(a)(2) that prospectively applied subparagraph (C) to the SBA. The 2022 amendment therefore further supports that Section 3(a)(2)(C) of the REA did not apply to the SBA.

Finally, we are unpersuaded by Obsidian’s arguments that the legislative history dictates applying subsection (C) to the SBA. Although legislative history may be helpful for statutory interpretation, the history cited by Obsidian does not sway our decision. Obsidian relies on the fact that, *after* passing the REA, the House attempted to pass a clarification bill to make the REA applicable to the SBA. H.R. 2345, Clarifying The Small Business Runway Extension Act (July 15, 2019). But “subsequent legislative history . . . is a particularly dangerous ground on which to rest an interpretation of a prior statute *when it concerns . . . a proposal that does not become law.*” *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (emphasis added). The clarification bill Obsidian relies on only ever passed in the House. It was not approved by the Senate and does not suggest Congress intended for the REA to apply to the SBA. The only relevant bill that *did* ultimately win the approval of both chambers of Congress was the 2022 amendment discussed above. Unlike the failed House bill, the 2022 amendment made no mention of being a clarification and is, as explained above, presumed to have substantively

changed, not simply clarified, the prior meaning of Section 3(a)(2).

Moreover, to the extent the REA congressional reports imply that the bill's sponsors believed the REA would apply to the SBA, this does not change our analysis. *See* H. R. Rep. No. 115-939, at 2 (2018); S. Rep. 115-431, at 4 (2018). What a bill's sponsors *think* an amendment will do, and what an amendment *actually does*, are two separate things. Here, such ambiguous evidence of the sponsoring legislators' mindset does not negate the clear text, structure, and other evidence that all suggest the REA did not apply to the SBA.

## IV

Having agreed with the Court of Federal Claims that the SBA's size determination was not arbitrary or capricious because the REA did not apply to the SBA, we also hold that the court did not abuse its discretion in denying injunctive relief. There can be no injunctive relief without a corresponding prevailing claim. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018) (holding that "proving success on the merits is a necessary element for a permanent injunction"). Obsidian failed to succeed, and the Court of Federal Claims was correct to deny Obsidian's requested relief.

## V

We have considered Appellant's other arguments and find them unpersuasive or unnecessary to reach. For the reasons above, we affirm.

**AFFIRMED**

COSTS

No costs.